USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/5/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAMAZ METREVELI,

                Petitioner,

-against-

BRYAN FLANAGAN, ET AL.,

                Respondents.

25-CV-8039 (MKV)

**OPINION & ORDER DENYING PETITION FOR HABEAS CORPUS**

MARY KAY VYSKOCIL, United States District Judge:

On September 25, 2025, Petitioner Tamaz Metreveli ("Petitioner"), appearing *pro se*, filed a Verified Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241. [ECF No. 1, ("Petition" or "Pet.")]. On October 8, 2025, this Court ordered the Government to respond within 60 days. [ECF No. 5].

On November 14, 2025, Petitioner attempted to file an Emergency Motion for "an administrative order staying his imminent removal from the U.S. to his native Georgia pending further order of the Court," however, the malformed motion was not docketed until November 17. [*See* ECF No. 15, "Nov. 14 Mot.")]. On November 15, 2025, Petitioner filed a subsequent application for a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") again seeking a stay of Petitioner's removal from the United States pending a decision on the merits of his habeas Petition. [ECF No. 13, ("Nov. 15 Mot.")]. The November 15 Motion similarly was not docketed until November 17, 2025. [ECF No. 13]. Upon receipt of Petitioner's motions, the Court ordered the Respondents (the "Government") to respond. [ECF No. 9]. The Court is in receipt of the Government's memorandum of law in opposition ("Opp'n"). [ECF No. 10]. The Court is also in receipt of Petitioner's Reply ("Reply") filed on Petitioner's behalf by counsel. [ECF No. 20].

For the reasons contained herein, the Court DENIES the Petition for lack of subject-matter jurisdiction and DENIES the motions for a temporary restraining order and preliminary injunction as moot.

## FACTS & PROCEDURAL BACKGROUND[1]

Petitioner is a native and citizen of Georgia.  Quizhpi Decl. ¶ 2.  Petitioner is the subject of a removal order issued by an immigration judge in July of 2020.  Pet. at 5; *see also* Quzhpi Decl. ¶ 5.  Petitioner unsuccessfully appealed the order of removal to both the Board of Immigration Appeals ("BIA") and the United States Court of Appeals for the Fifth Circuit.  Pet. at 5-6; *see also* Quizhpi Decl. ¶¶ 6-8, 10.  The Fifth Circuit denied his petition for review on January 8, 2024.  Quizhpi Decl. ¶ 9; *see also* Nov. 15 Mot. at 3.

On September 25, 2025, Petitioner and his U.S. citizen spouse, Anna Sternbach Malgorcata, appeared at 26 Federal Plaza in New York, New York for an appointment before United States Citizenship and Immigration Services ("USCIS") concerning Ms. Malgorcata's Form I-130 Petition for Alien Relative ("I-130 Petition") and Petitioner's I-485 application for adjustment of status ("I-485 application").  Nov. 15 Mot. at 2-3.  According to Quizhpi's Declaration, the I-130 Petition submitted on Petitioner's behalf previously had been approved on October 23, 2023.  Quizhpi Decl. ¶ 9; *see also* Nov. 15 Mot. at 12 (noting that the Form I-130 had been approved).  An approved I-130 Form does not establish eligibility for adjustment of status but rather establishes only the Petitioner's relative status to a citizen.  The non-citizen relative may

---

[1] The Court's recitation of the facts is in part drawn from the Declaration of Jonathan Quizhpi, a Deportation Officer at U.S. Immigration and Customs Enforcement ("ICE"), to supplement the bare-bones facts alleged in the underlying Petition and Petitioner's motions.  [ECF No. 11, "Quizhpi Decl."].  The declaration is based on Officer Quizhpi's review of Petitioner's administration file, consultation with colleagues, and U.S. Immigration and Customs Enforcement ("ICE") electronic records and databases.  *Id.* at ¶ 2.

in turn submit a separate application for a visa or adjustment of status. *See Dep't of State v. Munoz*, 602 U.S. 899, 904 (2024).

According to the Petition, Petitioner's I-485 application was never adjudicated on the day of his appointment with USCIS. Pet. at 7. Petitioner asserts that instead the USCIS "called [Immigration and Customs Enforcement ("ICE"] and arranged" for Petitioner to be arrested during the interview for his I-485 application "without a decision on the merits" of the actual application. *Id.* at 7. Petitioner was subsequently detained at 26 Federal Plaza. *Id.* at 2. The Government does not dispute that Petitioner was arrested on that date but asserts that Petitioner's I-485 application was in fact denied. Quizhpi Decl. ¶ 11. According to the Government, in addition to denying Petitioner's I-485 application, "[i]t was determined that [Petitioner] had an outstanding Final Order of Removal with no pending appeals," and thus he was arrested and detained at 26 Federal Plaza from 2:02 p.m. EST to 6:02 p.m. EST. Quizhpi Decl. ¶ 12. Petitioner was then transferred to Delaney Hall Detention Facility in Newark, New Jersey at 6:45 p.m. EST. Quizhpi Decl. ¶ 13.

Later that same day, Petitioner filed this habeas Petition. According to the Government, a copy of the Petition was served on ICE by email, and the time stamp on the Petition recorded the time of filing as "PM 11:58." [ECF No. 10-4]. According to Petitioner, the Petition does not seek review of the order of removal and instead seeks review of his allegedly unlawful arrest. Pet. at 7; Reply at 5. Petitioner asserts that the arrest "deprive[d] him of a reasonably fair opportunity to be heard on the merits of [his] applications for adjustment of status in violation of the 5th Amendment." Pet. at 8. The Petition seeks (1) an order "ensuring that [he is] not transferred out of the jurisdiction of this court"; and (2) the "opportunity to demonstrate that [his] arrest [was] unlawful because it deprives [him] of a statutory right to a decision on the merits of [his] application[ ] for . . . adjustment." *Id.*

On the evening of November 14, 2025, Petitioner attempted to file a motion for "an administrative order staying his imminent removal from the U.S. to his native Georgia pending further order of the Court." Nov. 14 Mot. at 2. However, the motion was not docketed because the submitted PDF version of the document was malformed. The November 14 Motion provided notice that the government had transferred Petitioner from New Jersey to an "undisclosed detention facility likely in Louisiana." Nov. 14 Mot. at 2. Petitioner moved for the Court to issue a stay of removal because ICE informed him that he would be "imminently removed in violation of federal law and regulations[.]" Nov. 14 Mot. at 3. Subsequently, on the evening of November 15, 2025, Petitioner filed a further motion for a temporary restraining order and preliminary injunction. *See* Nov. 15 Mot. at 1. In his second Motion, Petitioner again seeks to restrain the government from removing him from the United States pending a resolution of his habeas Petition and asserts that his removal was set to take place on November 16, 2025. Nov. 15 Mot. at 1.

## ANALYSIS

### A. The Court Lacks Jurisdiction Over Petitioner's Habeas Petition and Petitioner's Motions for a Temporary Restraining Order and Preliminary Injunction.

The Court must deny the Petition as well as Petitioner's request for a temporary restraining order and preliminary jurisdiction staying his removal because the Court lacks jurisdiction to grant the underlying requested relief.

"Federal district courts retain very limited subject-matter jurisdiction to review challenges to orders of removals." *Turcio v. Noem*, No. 25-CV-05941 (MMG), 2025 WL 2124129, at *2 (S.D.N.Y. July 29, 2025); s*ee also De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007) (noting that Section 106 of the REAL ID Act of 2005 (codified at 8 U.S.C. § 1252) "strips district courts of jurisdiction to hear habeas petitions challenging final orders of

deportation"). Three subsections of 8 U.S.C. § 1252 are of particular significance here: Sections 1252(a)(5), 1252(b)(9), and 1252(g).

Section 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal entered or issued." 8 U.S.C. § 1252(a)(5). In turn, Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). These two provisions work together to channel all challenges to removal orders to the Circuit Court of Appeals. *See Asylum Seeker Advoc. Project v. Barr*, 409 F. Supp. 3d 221, 225 (S.D.N.Y. 2019); *see also Turcio v. Noem*, 2025 WL 2124129, at *2. Further, Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or ***execute removal orders*** against any alien under this chapter." 8 U.S.C. § 1252(g) (emphases added). Section 1252(g) expressly bars jurisdiction "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 [All Writs Act] of such title." *Id.* (alteration added).

Addressing Section 1252(g), the Supreme Court has held that the provision "mak[es] it clear that" decisions to "commence proceedings, adjudicate cases, or execute removal orders"— as opposed to, for example, "decisions to . . . surveil the suspected violator, [or] reschedule [a] deportation hearing," are funneled into "the 'zipper' clause of § 1252(b)(9)." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482-83 (1999) ("*AADC*"). As the Supreme Court emphasized, this provision was "specifically directed at the deconstruction, fragmentation, and

5

hence prolongation of removal proceedings" and designed to protect the Executive's discretion when it comes to the three enumerated acts. *Id.* at 486-87.

Relevant here, the Second Circuit expressly held that Section 1252(a)(5) precludes a district court from entertaining not only a direct challenge but also an ***indirect*** challenge to a removal order. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (emphasis added). The Second Circuit explained that while not every immigrant suit is a *per se* challenge to a removal order, a district court's jurisdiction to hear the claim "will turn on the substance of the relief that a plaintiff is seeking." *Id.* at 55. Applying that standard, the Second Circuit held that the district court did not have jurisdiction over a mandamus action to compel USCIS to adjudicate the merits of a petitioner's Form I-212 application for permission to reapply for admission after deportation or removal. *Id.* at 54-55. The Second Circuit held that even if a grant of the I-212 waiver would not "*per se* prevent her removal," it was "inextricably linked" to her removal order because it was "a necessary prerequisite to her ultimate goal of adjustment of status" and thus constituted an indirect challenge to her order of removal. *Id.* at 55.

Similarly, the Second Circuit in *Singh v. U.S.C.I.S.*, 878 F.3d 441, 446 (2d Cir. 2017), held that Section 1252(a)(5) divested the district court of jurisdiction "to require the USCIS to consider the merits of [a petitioner's] adjustment-of-status application" because it was the "the first step in adjusting [petitioner's] status to that of a lawful permanent resident" and, if he was successful, his "pending removal order would, he hopes, be rendered a nullity." Of course, the Court notes that the Second Circuit has also held that Sections 1252(a)(5) and 1252(b)(9) "do not preclude a district court from exercising jurisdiction over an action seeking review of the denial of an I–130 petition because such a denial is unrelated to any removal action or proceeding." *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009). However, in *Ruiz* there was no underlying order of removal as

there is in this case, so the sought after review in *Ruiz* did not even indirectly challenge an order of removal. *See id.* at 271-73.

Reading the plain language of this statutory scheme, it is clear that "Congress has prohibited district courts from staying a noncitizen's removal." *Turcio*, 2025 WL 2124129, at *2. Indeed, "Courts in the Second Circuit have consistently held that 8 U.S.C. §§ 1252(a)(5) and (g) strip district courts of jurisdiction over requests to stay removal." *Sean B. v. Wolf*, No. 20-CV-550 (JGK), 2020 WL 1819897, at *1 (S.D.N.Y. Apr. 10, 2020); *see also Barros Anguisaca v. Decker*, 393 F. Supp. 3d 344, 349-50 (S.D.N.Y. 2019) (noting that "a request for a stay of removal constitutes a challenge to a removal order, and that accordingly district courts lack jurisdiction to grant such relief," and collecting cases holding the same) (citation omitted). Moreover, following *Delgado*, numerous district courts in this Circuit have dismissed a wide variety of indirect challenges to removal orders for lack of jurisdiction. *See Asylum Seeker*, 409 F. Supp. 3d at 225 (collecting cases); *see also Andoh v. Barr*, No. 19-CV-08016 (PAE), 2019 WL 4511623, at *4 (S.D.N.Y. Sept. 18, 2019) (finding the court lacked jurisdiction over petitioner's claim for a stay of removal pending resolution of the motion to reopen because "[i]f resolved in Andoh's favor, the motion to reopen would have the effect of vacating his underlying order of removal"); *Yearwood v. Barr*, 391 F. Supp. 3d 255, 263 (S.D.N.Y. 2019) (holding that petitioner's claims that the government "violated their own regulations and procedural manual, thereby violating the [Administrative Procedure Act ("APA")]" is barred where the substance of relief would be to challenge the order of removal).

While Petitioner insists that the final order of removal is not at issue in his habeas Petition, and that instead the only issues arise from the actions Respondents took in detaining him during his I-485 interview and then transferring him out of New York allegedly in violation of their own policies, Reply at 5-8, Petitioner "fails to meaningfully engage with the substance of the relief that

7

he requests, which would require the Court to interfere with the execution of a lawful removal order." *Ceesay v. Bondi*, No. 25-cv-3716 (JSR), 2025 WL 1435615, at *2 (S.D.N.Y. May 16, 2025). Here, the substance of relief Petitioner seeks undoubtedly amounts to a challenge of his final order of removal over which this Court lacks jurisdiction. The Petition itself principally seeks a stay of removal in that it requests an "order ensuring that [Petitioner is] not transferred out of the jurisdiction of this court" which, of course, would operate to stay removal if granted. Pet. at 8.[2] And in his recently filed motions for a temporary restraining order and a preliminary injunction the Petitioner plainly seeks a stay of removal pending resolution of his underlying Petition, which asserts that his arrest was unlawful and deprived him of the opportunity to have his adjustment of status application heard. *See* Nov. 14 Mot. at 2-3; *see also* Nov. 15 Mot. at 1. Further, the Petition, and the motions for a stay of removal, indirectly challenge Petitioner's final order of removal because the sought after adjudication of his adjustment of status application, if resolved in Petitioner's favor, would have the effect of vacating the underlying removal order. *See Delgado*, 643 F.3d at 55; *Singh,* 878 F.3d at 446 (no jurisdiction over claim seeking "to require USCIS to consider the merits of an adjustment-of-status application" given that, if successful, the "pending removal order would, [petitioner] hopes, be rendered a nullity"). Indeed, Petitioner explains that "should USCIS approve his application for permanent residence, the USICE will no longer need to spend time and efforts in removing him . . . since he would become entitled to remain in the United States legally." Nov. 15 Mot. at 11.

In short, the Petition, as well as Petitioner's motions for a stay of removal, amount to challenges to his removal order, which consequently deprive this Court of jurisdiction. *See, e.g.*,

---

[2] In his Reply, Petitioner argues that the Government has conceded that the Petition does not challenge his underlying order of removal. *See* Reply at 5. This argument overlooks the fact that the Government elsewhere makes clear that the habeas petition "principally seeks a stay of his removal, i.e., an order that he is 'not [to be] transferred out of the' Court's jurisdiction until his adjustment of status application is decided[,]" which, as discussed, amounts to a challenge to his order of removal over which the Court lacks jurisdiction. *See* Opp'n at 4.

*Turcio*, 2025 WL 2124129, at *2-3 (finding 8 U.S.C. § 1252 deprived the court of jurisdiction of Petitioner's habeas petition and his request for stay of removal); *Andoh*, 2019 WL 4511623 at *4.

The Court acknowledges that its decision is at odds with a decision from another court in this district. *See You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451 (S.D.N.Y. 2018). In *You*, the petitioner, who was subject to a final removal order, was arrested at his I-485 interview and was informed he would be deported. *Id.* at 455-456. The petitioner then filed a petition alleging his arrest and detention was unlawful and sought a stay of removal pending adjudication of his habeas petition. *Id.* at 456. The court determined Section 1252 did not strip the Court of jurisdiction to act on the petition and to stay removal, reasoning that the petition did "not challenge the discrete decision to remove" but instead challenged the "manner" by which the Government decided to execute removal. *Id.* at 457-60 ("Respondents are empowered to remove Petitioner at their discretion. But they cannot do so in any manner they please.").

This Court respectfully declines to follow the decision in *You*. The *You* decision is at odds with binding Circuit precedent in *Delgado* and *Singh* each of which examined Section 1252(a)(5). The court in *You* sidestepped this authority reasoning that those decisions did not have the "benefit" of non-binding dicta from the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). *See You*, 321 F. Supp. 3d at 458-59 & n.5 (citing *Jennings*, 138 S.Ct. at 840). In Section II of *Jennings* (on which the *You* court relied), Justice Alito joined by Justices Kennedy and Roberts, merely stated that Section 1252(b)(9) would not necessarily jurisdictionally bar review of all actions technically "arising from any action taken or proceeding brought to remove an alien." 138 S. Ct. at 840. In turn, the Supreme Court provided a few examples of claims that would not be barred: (1) a *Bivens* action for inhumane conditions of confinement, (2) a state-law claim for assault against a guard or fellow detainee, or (3) a tort claim against the owner or driver of a truck that crashes into a bus transporting detainees. *Id.* The Justices reasoned that "cramming

9

review of those questions into the review of final removal orders would be absurd." *Id.* None of these examples is applicable here.

Moreover, Justice Alito made clear that the parties in *Jennings* had "not addressed the scope of § 1252(b)(9)," and that it was enough to conclude Section 1252(b)(9) posed no jurisdictional bar because the detainees were "not challenging the decision to detain them in the first place or to seek removal; and [were] not even challenging any part of the process by which their removability will be determined." *Id.* at 841. Thus, the *Jennings* dicta—signed on to by three Justices—does not overrule either *Delgado* or *Singh* and does not dictate the outcome where, as here, Petitioner seeks an order ensuring he is not transferred out of the district (*i.e.*, a stay of removal), challenges the decision to detain him in the first place, and demands adjudication of his adjustment of status application, which if granted, could vacate his removal order. For this reason alone, the Court finds the contrary holding in *You* not persuasive and declines to find that the *Jennings* dicta joined by a minority of the Justices overruled binding Second Circuit authority on the question at issue here.

Finally, in decisions that both pre-date and post-date *You*, the Second Circuit in summary orders has held that Section 1252(g) strips district courts of jurisdiction to entertain habeas claims seeking to stay execution of removal orders. *See Troy ex rel. Zhang v. Barr*, 822 Fed. App'x 38, 39 (2d Cir. 2020) (explaining that § 1252(g) bars a district court from staying a noncitizen's removal because "[a] stay of removal is a request to delay the execution of a removal order") (summary order); *Singh v. Napolitano*, 500 F. App'x 50, 52 (2d Cir. Oct. 16, 2012) (holding that district courts are jurisdictionally barred from reviewing a habeas petition that seeks "effectively to challenge the validity and execution of [a petitioner's] removal order") (summary order). Here, that Petitioner's sought-after relief would effectively challenge his order of removal is dispositive.

10

Petitioner also relies on *Michael v. I.N.S.*, 48 F.3d 657 (2d Cir. 1995), for the proposition that pursuant to the All Writs Act this Court can stay removal "to prevent the case from becoming moot and to ensure that the court's jurisdiction is not defeated by the petitioner's removal." Nov. 15 Mot. at 9; Reply at 8 (arguing *Michael* makes clear that the Court can issue a stay of removal to preserve its jurisdiction under the All Writs Act). However, as explained, given the facts of this case, the Court lacks jurisdiction over the Petition itself. Accordingly, there is no jurisdiction to preserve. In any event, Petitioner's reliance on *Michael* is misplaced. First, *Michael* did not address the jurisdiction of a district court, but rather found that the "All Writs Act provides a ***federal court of appeals*** with an independent statutory basis to stay a deportation order." 48 F.3d at 661 (concluding that "the All Writs Act empowers federal courts of appeal to stay orders of deportation in order to safeguard the court's appellate jurisdiction"). Second, in reaching its decision, *Michael* analyzed a prior version of the statutory framework concerning judicial review of immigration proceedings. *See* 8 U.S.C. § 1105a. That statutory framework has since been critically altered both by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), and the REAL ID Act of 2005. Notably, the Supreme Court commented that the IIRIRA "repealed the old judicial-review scheme set forth in § 1105a and instituted a new (***and significantly more restrictive***) one in 8 U.S.C. § 1252." *AADC*, 525 U.S. at 475 (emphases added). Thus, *Michael*'s reasoning, which hinged on caulking "statutory cracks" in an outdated statutory framework that went "far to insure that aliens may obtain judicial review of final deportation orders" does not dictate a different result here. 48 F.3d at 661.

### B. The Court Cannot Transfer the Habeas Petition

The Government separately argues that this Court lacks jurisdiction over Petitioner's habeas Petition because it was filed when Petitioner was detained in New Jersey. Opp'n at 12-14; *see also* Quizhip Decl. ¶¶ 13-14 (detailing that the habeas Petition was filed on 11:53 p.m. on

11

September 25, 2025 which occurred after Petitioner was transferred to Delaney Hall in New Jersey). In "core habeas petitions challenging present physical confinement," the immediate-custodian and district-of-confinement rules require that a habeas petition be filed in the federal district where the petitioner is detained at the time of filing. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."); *see also Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (applying *Padilla* in the immigration context and noting that where claims "necessarily imply the invalidity" of confinement, the underlying petition is a "core habeas petition") (citation omitted). Consequently, the Government requests that this Court transfer the underlying Petition to the District of New Jersey.[3] Opp'n at 12-14. Petitioner challenges this request arguing that his petition is not a core-habeas petition—*i.e.*, not challenging his physical detention—and thus *Padilla* does not apply. Reply at 9-10.

The Court, in all events, declines the Government's request to transfer the Petition to the District of New Jersey because the Court concludes it lacks subject matter jurisdiction over the Petition. Thus, the Court need not reach whether the Petition here is a "core" habeas petition.

Even if this Petition were a core habeas petition, the district-of-confinement and immediate-custodian rules are "not jurisdictional in the sense of a limitation on subject-matter jurisdiction." *Skaftouros v. United States*, 667 F.3d 144, 146 n.1 (2d Cir. 2011) (internal quotation marks omitted). Rather, the rules are more akin to "personal jurisdiction or ***venue rules***." *Gooden v. Gonzales*, 162 F. App'x 28, 29 (2d Cir. 2005) (summary order) (emphases added). Several courts have held that "[b]efore a district court can consider a motion to transfer, it must determine whether it has subject-matter jurisdiction." *Modu v. Notorious B.I.G., LLC*, No. 20-CV-2453

---

[3] The Government urges this Court to deny only Petitioner's motions for a temporary restraining order and preliminary injunction as jurisdictionally barred by 8 U.S.C. § 1252. *See generally* Opp'n.

(LLS), 2020 WL 1911197, at *3 (S.D.N.Y. Apr. 16, 2020); *Shoham v. United Airlines*, No. 22-cv-05677(DLI)(RER), 2022 WL 13798296, at *3 (E.D.N.Y. Oct. 21, 2022) ("Federal courts must . . . find the existence of subject-matter jurisdiction before they may entertain a motion to transfer . . . . Since this court lacks subject matter jurisdiction over the instant matter, no order transferring the case may be issued."). Other courts have opted to assess venue prior to addressing subject matter jurisdiction "in the interests of adjudicative efficiency." *See Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 602 (S.D.N.Y. 2016). The Court declines to take the latter approach here, even if this were a core habeas petition, given the bottom-line conclusion that district courts are jurisdictionally barred from entertaining the Petition. The interests of adjudicative efficiency would not be served by transferring this matter from one court that cannot adjudicate it to another one that cannot do so either. Because the Court lacks subject-matter jurisdiction over this case, no transfer order may be issued.

## CONCLUSION

For the foregoing reasons, the Petition is DISMISSED for lack of subject-matter jurisdiction. Petitioner's motions for a temporary restraining order and a preliminary injunction are DENIED administratively as moot.

The Clerk of Court is respectfully requested to close the case.

**SO ORDERED.**

**Date: December 5, 2025**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

13